UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>TOCCI BUILDING CORPORATION, TOCCI RESIDENTIAL LLC, and JOHN L. TOCCI, SR.,<br><br>Defendants. | Civ.No. 21-10388<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND RELATED RELIEF** |

## INTRODUCTION

1.     Admiral Insurance Co. ("Admiral") issued certain policies of primary commercial general liability insurance to Tocci Building Corporation, a general contractor and construction manager headquartered in Woburn, Massachusetts.[1]  In this action, Admiral seeks a determination that no coverage is owed to Tocci, and certain of Tocci's officers and affiliates, with respect to three related actions currently pending in New Jersey and Massachusetts.

## PARTIES

2.     Admiral is an insurance company, incorporated in Delaware, with its principal place of business in Scottsdale, Arizona.  It issued the Policies to Tocci Building Corporation

---

[1]     The Policies issued to Tocci by Admiral include Policy No. CA000017078-01, eff. October 21, 2012 - October 21, 2013 (the "2012 -13 Policy"); Policy No. CA000017078-02, eff. October 21, 2013 – October 21, 2014 (the "2013 – 14 Policy"); Policy No. CA000017078-03, eff. October 21, 2014 – October 21, 2015 (the "2014 – 15 Policy"); Policy No. CA000017078-04, eff. October 21, 2015- October 21, 2016 (the "2015 – 16 Policy"); Policy No. CA000017078-05, eff. October 21, 2016- October 21, 2017 (the "2016 – 17 Policy"); Policy No. CA000017078-06, eff. October 21, 2017 – October 21, 2018 (the "2017 -18 Policy"); Policy No. CA000017078-07, eff. October 21, 2018-October 21, 2019 (the "2018 – 19 Policy"); and Policy No. CA000017078-08, eff. October 21, 2019 – October 21, 2020 (the "2019 -20 Policy") (collectively, the "Policies" or the "Admiral Policies").

("Tocci Building").   The Policies were brokered by the Driscoll Agency, in Norwell, Massachusetts, and covered risks in multiple jurisdictions.

3.      Tocci Building is a construction company, incorporated in Massachusetts, with its principal place of business at 660 Main Street, Woburn, Massachusetts.  It performs operations in Massachusetts, New Jersey, and other states.  It is the first named insured under each of the Policies that are the subject of this complaint.

4.      Tocci Residential LLC ("Tocci Residential") is a limited liability company and an affiliate of Tocci Building.  It is organized under Massachusetts law, and based in Woburn, Massachusetts.  Its sole member is John L. Tocci, Sr.  ("John Tocci").

5.      John Tocci is an individual who resides in Lexington, Massachusetts.   On information and belief, Mr. Tocci is the President, Treasurer, and Director of Tocci Building, and the Manager of Tocci Residential.

6.      Tocci Building, Tocci Residential, and John Tocci have each been named as defendants in one or more separate lawsuits, described further below.[2]   Therefore, for purposes of this Complaint, except where context otherwise requires, these individuals and entities will be referred to collectively as the "Tocci Defendants," or, for brevity, "Tocci."

## JURISDICTION AND VENUE

7.      In this action, Admiral seeks declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.,* and asserts a claim for breach of contract, i.e., a failure by Tocci to comply with obligations as to notice and cooperation under the Policies.  This Court has jurisdiction pursuant to 28 U.S.C.

---

[2]      The lawsuits include *Toll JM EB Residential Urban Renewal LLC v. Tocci Residential LLC, et al.*, No. 3:16-cv-05422 (United States District Court for the District of New Jersey) (the "Toll Action"); *Tocci Building Corporation v. IRIV Partners, et al.*, No. 1984CV00405-H (Massachusetts Superior Court) (the "BHID Action"); and *Tocci Building Corporation v. Connell Hospitality LLC,* No. 01-17-0002-8158 (AAA Arbitration) (the "Connell Action"). For purposes of this Complaint, except where context otherwise requires, these actions will be referred to, collectively, as the "Tocci Actions," or the "Actions."

§ 1332(a) because there is a complete diversity among the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

8.     Venue is proper because each of the Tocci Defendants is located in this judicial district and because the relevant insurance policies were brokered and issued here.

## BACKGROUND

9.     Between December 27, 2013 and October 31, 2016, Tocci entered into agreements to serve as construction manager and/or general contractor at three separate construction projects. The first project, known as the "Connell Project," involved the development of a hotel in Berkeley Heights, New Jersey, owned by Connell Hospitality LLC ("Connell"). The second project, known as the "Toll Project," involved the development of an apartment complex in East Brunswick, New Jersey, owned by Toll JM EB Residential Urban Renewal LLC ("Toll"). The third project, known as the "BHID Project," involved renovation of an office building in Boston, Massachusetts, owned by Boston Harbor Industrial Development LLC ("BHID"), with IRIV Partners, LLC ("IRIV"), acting as BHID's manager. For purposes of this Complaint, except where context otherwise requires, these three projects will be referred to collectively as the "Projects."

10.     Disputes soon arose at each of the three Projects. The owners of the Projects accused Tocci of failing to meet Project deadlines; failing to provide adequate staff for the projects; failing to manage or supervise subcontractors, being "ill prepared"; and being "unable or unwilling" to retain competent assistance.

11.     The owners also accused Tocci of financial mismanagement. They accused Tocci of submitting false billing statements, overcharging or charging duplicate amounts for general conditions, supervision and other overhead items; and misrepresenting amounts sought in monthly payment requisitions.

12.     As a result, the owners said, each of the Projects experienced significant cost overruns and delays in completion.  At each of the three projects, on information and belief, Tocci's mismanagement led to Tocci's termination as project supervisor, leaving the owners to complete the projects themselves.

13.     In each case, Tocci rejected the owners' criticisms, and demanded payment it said it was owed under its contracts.  In each case, litigation ensued.

14.     In each case, Tocci elected to defend itself and prosecute its own claims.  It did not immediately tender to Admiral and – in the Connell Action – it affirmatively disavowed any intention to do so.  Instead, Tocci appointed its own counsel, and proceeded to develop its theories and defenses without inviting (or allowing) Admiral's participation.

15.     Tocci's initial decision – to handle these matters on its own – was consistent with the Admiral Policies' language, terms and intent.  The Policies are liability policies.  They protect an insured against third-party claims for "bodily injury," or "property damage," caused by an "occurrence," i.e., an "accident."  The Policies do not cover an insured for poor business judgment, poor management, or failure to meet its own negotiated contractual obligations.  Nor do they cover claims for fraud, delay damages, faulty workmanship, failure to complete contract work, or the other types of malfeasance the owners of the three Projects have alleged.  Nor do they cover costs of prosecuting claims against the Project owners for breach of contract.  On information and belief, Tocci recognized this.  It withheld notice to Admiral because it knew no coverage was afforded by the policies.  And it wished to avoid revealing to Admiral the number and extent of the disputes in which it had become involved with its contractual counterparties.

## TENDERS TO ADMIRAL

16.     In January 2020, for reasons that remain unexplained, Tocci had a change of heart. Reversing previous positions, it tendered the Connell and Toll Actions to Admiral, and demanded that Admiral assume defense of these matters under the Policies.  Around the same time, Tocci tendered to Admiral the counterclaim it had received in the pending BHID Action.

17.     Tocci's lengthy delay in tendering the Connell and Toll Actions, and in advising Admiral of the BHID counterclaim, violated the terms of the Policies.  These delays prejudiced Admiral by limiting its ability to timely investigate or respond to these claims, or to involve subcontractors whose policies included Tocci as additional insured.  Moreover, these delays prejudiced Admiral by depriving Admiral's underwriters of information as to the extent of Tocci's involvement in litigation.  Had this information been available, it is likely that Admiral would not have renewed the policies at the same favorable premiums, and on the same favorable terms, that Tocci secured by keeping Admiral in the dark.

18.     After receiving the three tenders, Admiral attempted to investigate.  It sent Tocci various requests for additional information.  Tocci failed to provide the requested information. Instead it provided large volumes of undifferentiated documents that were not responsive, or only partially responsive, to the questions Admiral posed.

19.     It now appears – based on the limited information Tocci has provided – that none of the claims Tocci tendered are entitled to coverage at all.  In each of these Actions, the owners of the Projects say Tocci did not carry on its business in a proper manner.  They say Tocci breached its contracts, submitted improper billings, failed to oversee subcontractors, and generated delays and overruns.  In some cases, the Project owners allege, Tocci's poor management led to poor or faulty workmanship, which needed to be restored, repaired or replaced.

20.     These types of claims, against a general contractor or construction manager, do not represent the types of risks the Admiral Policies were written to cover.  In demanding coverage from Admiral in these three cases, Tocci either fails to understand, or chooses to ignore, fundamental principles of insurance law.

## SPECIFIC PROJECTS

20.     The following paragraphs provide additional detail as to the three Projects at issue in this litigation, and the claims that have been filed against Tocci with respect to these Projects, and the reasons none of these claims are entitled to coverage.

## The Toll Action

21.     The Toll Action arises from a Construction Management Agreement ("CM Agreement") that Tocci entered with Toll in December 2013.  In that agreement, Tocci agreed to provide pre-construction and construction services in connection with the development of an apartment complex in East Brunswick, New Jersey.

22.     Thereafter, Toll alleges, Tocci's poor planning, gross mismanagement and significant workmanship issues led to significant delays and other issues with the work.

23.     On February 5, 2016, Toll declared Tocci to be in default under the Agreement.

24.     On March 2, 2016, Tocci was terminated.

25.     Following Tocci's termination, Toll says, another construction manager was hired to manage the completion of the Project, at a significantly higher cost.  The replacement construction manager finally completed the Project in June 2018, thirty months after the date the CM Agreement had called for.

26.     On July 20, 2016, Toll filed suit against Tocci in New Jersey Superior Court.  The suit was removed to federal court on September 7, 2016.  In the suit, Toll alleges that Tocci's "poor

planning, gross mismanagement and significant workmanship issues" caused the Project to suffer significant delays.  It alleges that Tocci failed to install key elements of the Project in a timely manner or provide shop drawings to the Township on schedule.

27.     Toll also alleges that Tocci failed to properly manage trade subcontractors, and "facilitate the performance and completion of the Work in the most expeditious and economical manner."  It alleges that Tocci failed to "review the design and construction documents for constructability and compliance with applicable building codes, and to obtain and review for constructability any inconsistencies between submittals and the Contract Documents."  It alleges that Tocci's deficiencies led to a stop-work order, which Tocci ignored.

28.     Finally, Toll alleges poor workmanship by Tocci and its subcontractors.  That faulty work allegedly included (but was not limited to) deficient installation of a weather resistive barrier, deficient installation and sealing of windows, failure to properly backfill and compact on-site soils, failure to provide sprinklers in attic areas, failure to discover that hot water heaters were too large for mechanical closets, failure to correctly install wire mesh in concrete slabs, discharge of water by an electrical conduit onto electrical equipment, failure to install unit balcony membrane, upside down installation of soundproofing resilient channels, incorrect installation of fire-resistant shafts, and a failure to install ducts.  None of these allegations involve resultant damage, to third parties, of a type that might be entitled to coverage under the Admiral Policy.

29.     Tocci did not immediately tender the Toll Action to Admiral.  Instead, Tocci elected to defend itself, without Admiral's knowledge or participation.  On at least two occasions, in June 2016 and October 2019, Tocci participated in mediations of the Toll Action; Admiral was not notified or given an opportunity to participate.

30.     Toll diddid, however, tender claims as an additional insured under various insurance policies issued to subcontractors:  an act that is inconsistent with the position Tocci now takes, that Admiral was required to defend Tocci against these liabilities unless and until the subcontractors' carriers stepped forward to do so.  On September 20, 2018, two insurers who provided coverage to Tocci's subcontractors in New Jersey – Citizens Insurance Company of America and Hanover Insurance Company (collectively "Citizens") –acknowledged that their policies would, in certain situations, be triggered by the claims in the Toll Action.  These insurers accepted a "conditional duty to reimburse Tocci in the event that there [was] a determination at the conclusion of the Underlying Action that [Tocci was] being held liable for damages with respect to or caused, in whole or in part by, [the subcontractor's] work.  Tocci did not accept this offer of defense.  On November 25, 2020, Citizens withdrew the offer, and reversed its position: arguing that no defense was, in fact, owed.

33.     30.     On January 9, 2020, Tocci finally notified Admiral of the Toll Action. .

33.     On March 17, 2020, Admiral disclaimed coverage.

## The Connell Action

34.     The Connell Action arises from a series of connected agreements (collectively, the "Connell Agreement") between Tocci and Connell.  In the first agreement, entered January 2015, Tocci contracted with Connell to provide construction services and to build an Embassy Suites Hotel on a property in New Jersey.   In the second and third agreements, Tocci contracted with Connell to add a restaurant and a coffee shop for the property.

35.     After the agreements were signed, Connell alleges, Tocci's "gross incompetence and reckless mismanagement" led to delays and other issues with the work. Among other things, Connell alleges, Tocci mismanaged its obligations by failing to study the contract documents and

take field measurements, failing to contract with qualified subcontractors, failing to employ the requisite teams of project managers, superintendents and assistants, failing to supervise, coordinate or sequence the work, failing to consolidate completion of the work, and failing to ensure compliance with the law and contract documents.

36.     On February 22, 2017, Connell issued a Notice of Termination to Tocci.

37.     On May 12, 2017, Tocci sought arbitration of the parties' dispute.

38.     Some time thereafter, Connell asserted a counterclaim in the arbitration, alleging it acted reasonably in terminating Tocci.  Among other things, Connell alleges that Tocci was "ill prepared" and was unable and unwilling to carry out contracted-for undertakings.  Connell also alleges that "Tocci engaged incompetent and understaffed subcontractors, and then failed to put in place and maintain the requisite sized management team for each of the three projects with the expertise, ability and willingness to effectively manage each of the three projects …".

39.     Connell says the work of the various subcontractors was not coordinated and was not undertaken in accordance with Project plans and specifications.  As a result, Connell says, the work was not completed on time, and several manufacturers refused to honor warranties, arguing that their materials were improperly installed.

40.     Finally, the Connell Action – like the Toll Action – alleges that Tocci's mismanagement of the Project led to instances of poor workmanship by Tocci and its subcontractors.  The alleged faulty work included (but was not limited to) problems with [1] HVAC facilities; [2] electrical work; [3] drywall and carpentry; [4] masonry; [5] painting and wall coverings; [6] tile work; [7] roofing; [8] miscellaneous exterior problems; [9] unprotected equipment; [10] failures with respect to guest room showers and [11] deficiencies in the

installation of shower basins.  Again, none of these allegations involve resultant damage, to third parties, of a type that might be entitled to coverage under the Admiral Policy.

41.     In the Counterclaim, Connell seeks damages from Tocci for [1] breach of contract; [2] breach of the covenant of good faith and fair dealing; [3] negligence; [4] conversion; [5] fraud; [6] declaratory relief, as to the parties' contractual obligations; [7] willful overstatement of construction lien claims; [8] gross negligence; [9] breach of warranty; [10] cost of corrective work; and [11] reasonable value of corrective work.

42.     In the Counterclaim, Connell seeks reimbursement for approximately $35 million it paid Tocci over the course of the construction; liquidated delay damages in the amount of $1.7 million; and $40 million to "deconstruct" defective work by Tocci or to complete work Tocci did not perform.

43.     Although Connell asserted its counterclaim in 2017, Tocci did not tender promptly to Admiral.  Indeed, when Admiral became aware of the Connell Action and made inquiries, Tocci explicitly disavowed any intention to seek coverage.

44.     On January 28, 2020, Tocci reversed position, and advised Admiral that it was seeking coverage for the counterclaim in the Connell Action.Tocci also tendered claims as an additional insured under its subcontractors' policies.

46.     On April 30, 2020, Harleysville Worcester Insurance Company/Nationwide ("Nationwide") – which issued policies to subcontractor Material Distributors, Inc. –  agreed to defend Tocci under a reservation of rights in the Connell Action.  Harleysville has since indicated an intention to pursue a claim against Tocci, as to this matter.  Although Tocci has accepted the defense tendered by Harleysville, it has not disavowed its assertion that Admiral owes a defense under certain circumstances:  for example, if Harleysville is relieved of from its defense obligation.

47.     On July 17, 2020, and by follow-up thereafter, Admiral disclaimed coverage.

**The BHID Action**

48.     The BHID Action arises from an agreement (the "BHID Agreement") that was entered by Tocci and BHID in October 2016.  In the Agreement, Tocci agreed to serve as general contractor for renovation of an office building in Boston Massachusetts.

49.     From the outset, BHID says, Tocci consistently failed to meet Project deadlines, and failed to meet the deadline required for substantial completion, which impacted BHID's obligations to a tenant.  In addition, BHID says Tocci represented that it would obtain a Certificate of Occupancy by August 15, 2018, but failed to do so.

50.     On July 13, 2018, IRIV sent Tocci a Notice of Default, based on Tocci's alleged failure "to satisfactorily maintain the approved schedule."

51.     In February 2019, Tocci filed a complaint against BHID and IRIV, alleging [1] breach of contract, [2] breach of implied covenant of good faith and fair dealing, [3] quantum meruit; [4] fraud, and [5] foreclosure of mechanic's lien bond.  Tocci reasonably anticipated that BHID and IRIV would be filing a counterclaim in the action.

52.     Despite this knowledge, Tocci did not immediately advise Admiral of the action.  Instead, Tocci elected to represent itself, without Admiral's knowledge or participation.  Among other things, in mid-2019, Tocci participated in a prolonged mediation of the BHID Action; Admiral was not notified of the mediation or given an opportunity to participate.

53.     On January 2, 2020, BHID and IRIV filed their anticipated counterclaim again Tocci.  Among other things, the counterclaim alleges that Tocci failed to meet project deadlines, consistently and repeatedly failed or refused to perform contractual obligations, and failed to

perform the work in accordance with the standards of good workmanship, and in accordance with the Contract, the plans, and specifications.

54.     In addition, BHID says, Tocci submitted allegedly fraudulent payment applications in connection with the additional interior work.

55.     Finally, the BHID Action – like the Toll and Connell Actions – alleges that Tocci's mismanagement of the Project led to poor workmanship by Tocci and its subcontractors.  The alleged faulty work at the Project included a list of 57 separate items of deficient or incomplete work.  Among other things, BHID says: (1) Tocci negligently installed the concrete podium at the building's entrance; (2) Tocci failed to provide for install air conditioning vents in the stairwells in contravention of its mechanical, electrical, and plumbing ("MEP") design-assist responsibilities and in contravention of the standard of care governing mechanical engineering practice; (3) Tocci failed to connect plumbing fixtures in the restroom, failed to properly fasten sinks to walls, failed to install tiles in a uniform manner where required by contract, and failed to properly install switchplates and similar features; and (4) Tocci installed marble panels in the first floor reception area that were severely damaged — among other things, several panels had baseball-sized chunks missing, or were not of uniform width a required by the contract documents, or had cores for light sconces drilled at different heights.

56.     In addition, BHID says, Tocci installed plumbing that failed to meet code requirements, improperly secured HVAC ductwork, failed to install required structural bracing or install certain window openings, and failed to complete the first-floor restrooms at all.  BHID says that Tocci failed or refused to fix or complete the deficient work despite repeated requests.

57.     On January 23, 2020, Tocci gave Admiral notice of the BHID Counterclaim. Admiral informed Tocci that the counterclaim, as presented, did not include any claims that would

be entitled to coverage under the Policy.  It invited Tocci to provide evidence of potential covered damages.

58.     Finally, months later, Tocci provided extrinsic evidence to support its claim. However, the document provided did not demonstrate that any potentially covered property damage was being alleged.

60.     On August 6, 2020, Admiral disclaimed coverage.  Although Tocci has not pursued its claims actively since, it has not fully accepted Admiral's position, and it has not disavowed its assertion that Admiral owes a defense under certain circumstances.

## RELEVANT POLICY LANGUAGE

61.     Admiral's disclaimers of coverage as to the Toll Action, the Connell Action, and the BHID Action accorded with the operative language of the relevant Admiral Policies, and with applicable insurance law.

62.     The insuring agreement of each of the Policies states in relevant part:

**COVERAGE A:  Bodily Injury and Property Damage**

**Insuring Agreement**

**a.**          We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…

The Policies define "occurrence" as:

"[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Policies define "property damage" as

**a.**   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Here, none of the Tocci Actions include allegations of "property damage," caused by an "occurrence," as those terms are defined and understood.  For this reason, there is no coverage under the Admiral Policies.

63.     The Admiral Policies' definition of "products-completed operations hazard," "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: … (2) [w]ork that has not yet been completed or abandoned …". Here, Tocci did not "complete" or abandon the work at any of the projects.  Quite the opposite: Tocci was terminated, and new construction manager and contractors were hired to complete the projects.  As a result, Tocci is not entitled to completed operations coverage under the Admiral Policies.

64.     Moreover, each of the Policies includes a number of exclusions, limitations, and conditions, which operate – separately and together – to bar coverage even if the Insuring Agreement of the Policies is satisfied.

65.     For example, Exclusion J.5 states that there is no coverage for property damage to

that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations...

66.     Likewise, Exclusion J.6 states that there is no coverage for property damage to

that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

67.     Likewise, Exclusion L states that the Admiral Policies do not apply to

property damage to the insured's work arising out of it or any part of it and included in the 'products-completed operations hazard'. .

68.     Likewise, Exclusion M states that the Admiral Policies do not apply to:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of: [1] [a] defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or [2] a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

69.     Likewise, Form CG 22 34 04 13 states that the Admiral Policies "do[] not apply to 'bodily injury, 'property damage' or 'personal an advertising injury' arising out of:

1.     The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2.     Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph 1. or 2.

70.     The Policies also contain an exclusion for pre-existing damage, which states that the policies do not apply to:

1.   Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

(a)   which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

(b)   which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

2.   Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

71.    In addition to the Policy provisions above, coverage for these Actions appears to be precluded, in whole or in part, by the Policy exclusions for a) damage to "your product" arising out of it or any part of it; b) professional liability c) consolidated (wrap up) insurance programs; d) property damage" that is expected or intended from the standpoint of the insured; e) "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement; f) punitive damages.

72.    Furthermore, the Policies contain notice provisions, setting out Tocci's duties in the event of occurrence, offense, claim or suit:

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(**1**)   How, when and where the "occurrence" or offense took place;

(**2**)   The names and addresses of any injured persons and witnesses;

     **(3)**   The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.**   If a claim is made or "suit" is brought against any insured, you must:

     **(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)**   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.**   You and any other involved insured must:

     **(1)**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)**   Authorize us to obtain records and other information;

     **(3)**   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

73.    The Admiral Policies provide that they are excess to other insurance under which Tocci is an additional insured.  Specifically, they provide that:

  b.  Excess Insurance

    (1)  This insurance is excess over:

    …

       (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured

This paragraph is expanded by form AD 66 80 06 08, which provides:

> This insurance is excess over any other insurance available to you as an Additional Insured from any in- dependent contractor or subcontractor or on any other basis, whether such insurance is primary, excess, or contingent:
>
> > (1)   That is fire, extended coverage, builders risk, installation risk, or similar coverage for "your work";
> >
> > (2)   That is fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or
> >
> > (3)   If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion g. of COVERAGE A (SECTION I); or
> >
> > (4)   If the loss arises out of work performed for you or on your behalf, or a product manufactured for you or on your behalf, by an independent contractor or subcontractor.

74.   Even if there were coverage under the Admiral Policies, it would only apply in excess to other insurance covering Tocci as an additional insured, including but not limited to the policies issued by Citizens and Nationwide.

75.   The Admiral Policies further provide that :

> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers

76.   Finally, the Admiral Policies do not cover any amounts spent prosecuting Tocci' affirmative claims;  and they do not require Admiral to reimburse Tocci for costs incurred prior to Tocci's tender of the Tocci Actions to Admiral.

## COUNT I

### Declaratory Judgment – Toll Action

77.     Admiral re-alleges and incorporates by reference paragraphs 1 through 33 and 61 through 76, above, as if fully set forth herein.

78.     For the reasons set forth herein and in prior correspondence between the parties, Admiral is entitled to a declaration that the terms of the applicable Policies do not obligate it to defend or indemnify Tocci in the Toll Action.

79.     There exists an actual and justiciable controversy between Admiral and Tocci as to these matters, as to which Admiral has no adequate remedy at law.

## COUNT II

### Declaratory Judgment – Connell Action

80.     Admiral re-alleges and incorporates by reference paragraphs 1 through 20, 34 through and 47, and 61 through 76, above, as if fully set forth herein.

81.     For the reasons set forth herein and in prior correspondence between the parties, Admiral is entitled to a declaration that the terms of the applicable Policies do not obligate it to defend or indemnify Tocci in the Connell Action.

82.     There exists an actual and justiciable controversy between Admiral and Tocci as to these matters, as to which Admiral has no adequate remedy at law.

## COUNT III

### Declaratory Judgment – BHID Action

83.     Admiral re-alleges and incorporates by reference paragraphs 1 through 20 and 48 through 76, above, as if fully set forth herein.

26715869v.1

84.     For the reasons set forth herein and in prior correspondence between the parties, Admiral is entitled to a declaration that the terms of the applicable Policies do not obligate it to defend or indemnify Tocci in the BHID Action.

85.     There exists an actual and justiciable controversy between Admiral and Tocci as to these matters, as to which Admiral has no adequate remedy at law.

**COUNT IV**

**Breach of Contract**

86.     Admiral re-alleges and incorporates by reference paragraphs 1 through 74, above, as if fully set forth herein.

87.     Tocci's actions with respect to the Connell, Toll, and IRIV Actions, including its delays in notice, its failure to provide requested information as to these actions, and its reversal of position – after litigating these actions without Admiral's involvement for prolonged periods of time – amount to a breach of Tocci's contractual obligations under the Policies.  Admiral has been damaged by Tocci's breach.

**PRAYER FOR RELIEF**

WHEREFORE, Admiral prays for judgment as follows:

1.      That the Court declare that Admiral has no duty to defend or indemnify Tocci with respect to the Toll Action;

2.      That the Court declare that Admiral has no duty to defend or indemnify Tocci with respect to the Connell Action;

3.      That the Court declare that Admiral has no duty to defend or indemnify Tocci with respect to the IRIV Action;

4.     That the court award damages or other appropriate relief for Tocci's breach of contract; and

5.     That the Court order such other and further relief as is just and proper.

Respectfully submitted,

ADMIRAL INSURANCE COMPANY

By counsel,

/s/ Eric B. Hermanson
Eric B. Hermanson (BBO #560256)
Austin D. Moody (BBO #704315)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston MA  02110-1103
Telephone: (617) 748-5200
Fax: (617) 748-5201
hermansone@whiteandwilliams.com
moodya@whiteandwilliams.com

Dated: March 5, 2021

26715869v.1