**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

_____
                                 )
ADMIRAL INSURANCE COMPANY,       )
                                 )
            Plaintiff,           )
                                 )          Civil Action
v.                               )          No. 21-10388-PBS
                                 )
TOCCI BUILDING CORPORATION, et al. )
                                 )
            Defendants.          )
_____)

**MEMORANDUM AND ORDER**

March 28, 2022

Saris, D.J.

**INTRODUCTION**

This case arises from an insurance coverage dispute.
Between December 27, 2013, and October 31, 2016, defendants
Tocci Building Corporation ("Tocci Building"), Tocci Residential
LLC ("Tocci Residential"), and John L. Tocci, Sr. ("John Tocci")
(collectively, "Tocci" or "Defendant") entered into independent
agreements with Toll JM EM Residential Urban Renewal LLC
("Toll"), Connell Hospitality LLC ("Connell"), and Boston Harbor
Industrial Development LLC ("BHID") to serve as the construction
manager and/or general contractor for three separate
construction projects (collectively, "Projects"). In 2016, 2017,
and 2020, respectively, Toll filed suit against Tocci in New
Jersey Superior Court ("Toll Action"), Connell filed a
counterclaim against Tocci in the parties' arbitration

[1]

proceeding ("Connell Counterclaim"), and BHID filed a counterclaim against Tocci ("BHID Counterclaim") in response to a complaint Tocci filed. Plaintiff Admiral Insurance Company ("Admiral") issued annual policies of primary commercial general liability insurance ("Policies") to Tocci between 2012 and 2020. In January 2020, Tocci tendered the Toll Action, Connell Counterclaim, and BHID Counterclaim to Admiral, seeking defense and indemnity coverage from Admiral.

Admiral has moved for partial summary judgment as to Count I, seeking declaratory judgment that Admiral is not obligated to defend Defendants in the Toll Action. Defendant brought a cross motion for partial summary judgment seeking declaratory judgment that Admiral is obligated to defend and indemnify Defendant in the Toll Action.

Concluding that Admiral has no duty to defend the Toll Action, the Court **ALLOWS** Admiral's motion for partial summary judgment (Dkt. 10) and **DENIES** Tocci's motion for partial summary judgment (Dkt. 88).

**FACTUAL BACKGROUND**

## I.   **The Parties**

Tocci Building is a construction company incorporated and headquartered in Massachusetts. It is the first named insured under each of the Policies, with a "Mailing Address" of 660 Main Street, Woburn, Massachusetts. The Policy applications refer to

[2]

Tocci as "operating in the Northeast," and refer to "various job sites" in Connecticut, New Hampshire, New Jersey, New York, and Georgia.

Tocci Residential is a Massachusetts-based limited liability company, with its principal place of business in Woburn, Massachusetts.

John Tocci is an individual who resides in Lexington, Massachusetts.

Admiral is an insurance company incorporated in Delaware with its corporate headquarters in New Jersey. Between October 2012 and October 2020, Admiral issued primary commercial general liability insurance policies to Tocci.

## II.  **The Toll Project and Toll Action**

In December 2013, Toll and Tocci entered into a Construction Management Agreement. In that agreement, Tocci agreed to provide Toll with pre-construction and construction services for its apartment complex project in East Brunswick, New Jersey (the "Project"). As construction manager, Tocci was responsible for managing all aspects of Project construction, including hiring and overseeing various subcontractors to perform work on the Project.

On March 2, 2016, Toll terminated Tocci, citing "countless delays to the Project schedule, each of which was caused [or] exacerbated by [Tocci's] failure to [properly] prosecute and

manage the work." Dkt. 12 ¶¶ 26, 28. On July 21, 2016, Toll filed suit against Tocci in New Jersey Superior Court.

The Toll Amended Complaint laid out a series of deficient work and supervision claims. Toll alleged "significant workmanship issues, including, but not limited to, the Construction Manager's failure to properly install the building envelope due to deficient installation of the primary weather resistive barrier (Zip System) and deficient installation and sealing of the windows in all five buildings constructed at the time." Dkt. 12 Ex. B ¶ 23. Toll further alleged that Tocci missed permitting deadlines, failed to install required perimeter drains in basement areas, and failed to backfill basement walls with proper structural bracing, leading to slab settlement. Toll issued Stop Work Orders for portions of two of the buildings "due to settlement and damaged underground utilities." Id. ¶ 25. Tocci allegedly failed to install sprinklers in the attic areas and "failed to provide Toll with the necessary information to obtain a full building permit in a timely manner." Id. ¶¶ 26, 27. Toll also claimed that Tocci breached its obligation to review documents and comply with building codes, failed to deliver a qualified team capable of managing the Project, and failed to properly manage the work to ensure that it was free of defects. Id. ¶¶ 28, 29.

Toll cited numerous alleged failures to keep the Project free from defects: [1] the wire mesh was not installed correctly in concrete slabs; [2] secondary electrical conduit discharged water onto electrical equipment; [3] a unit balcony membrane was never installed;[4] RC channels were installed upside down; [5] a shaft was incorrectly installed in Building 1; [6] a duct was not installed in Building 2; and [7] temporary weather protection was not installed. Toll alleged that, after failing to comply with a Stop Work Order, Tocci "began to demobilize and abandon the Project in early February 2016." Id. ¶ 35.

III. **Coverage Communications between Admiral and Tocci**

Though Toll filed its initial complaint in 2016, Tocci did not notify Admiral of the pending lawsuit until January 9, 2020. Around February 13, 2020, a Tocci employee provided a copy of Toll's initial complaint and referred to two failed mediations Tocci participated in for the Toll Action.

On March 17, 2020, Admiral denied coverage for the Toll Action, reasoning that the underlying lawsuit "does not include any allegations that Tocci is liable for property damage caused by an occurrence, as those terms are defined in the policy." Dkt. 15-7, at 6. The letter continued, "even if the Lawsuit had alleged that Tocci was liable for property damage caused by an occurrence, the exclusion 'Damage to Property' bars coverage for

property damage arising out of Tocci's operations or 'your

work.'" Id.

Tocci's previous coverage counsel responded on May 7, 2020.

Tocci's counsel wrote,

> although Toll's Complaint does not specifically allege
> resultant property damage, during the deposition of
> Toll's corporate designee on damages, Eric Cohen, there
> was testimony that alleged defective workmanship of
> Tocci's subcontractors caused resultant property damage,
> which is an element of damages that Toll is seeking from
> Tocci in the Lawsuit.

Dkt. 15-18 at 3. Tocci's counsel's letter included excerpts from

the deposition, which Tocci's counsel characterized as showing

the following additional damage: (1) "a roof leak [that]

resulted in damage to sheetrock in Unit 3302 of Building 3 on

the Project"; (2) "[i]nadequate sheathing [that] resulted in

water getting into the building and led to mold formation that

required remediation"; (3) "[s]oil settlement [that] resulted in

damage to a pipe and the pipe was replaced"; and (4) "[s]oil

settlement [that] resulted in damage to a concrete slab and wood

framing." Id.

Admiral and Tocci exchanged a series of letters pertaining

to another insurer's coverage of one of Tocci's subcontractors,

culminating with a comprehensive letter on January 8, 2021, in

which Admiral summarized the disagreement, agreed to

provisionally defend Tocci, and informed Tocci it would seek a

court order that it had no duty to defend and would seek recoupment of defense costs.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). A material fact is one with the "potential of changing a case's outcome." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018). "The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." Carlson v. Univ. of New Eng., 899 F.3d 36, 43 (1st Cir. 2018). When the parties cross-move for summary judgment, the court must evaluate each motion "separately, drawing inferences against each movant in turn." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (quoting EEOC v. Steamship Clerks Union, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

## DISCUSSION

## I.   Choice of Law

As an initial matter, the parties strongly dispute which state's law should apply. Admiral argues that the law of Massachusetts should govern, while Tocci contends that the Court should apply New Jersey law.

## A.   An Actual Conflict of Substantive Law Exists

When sitting in diversity, the Court must use the choice of law principles of the forum state. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). The threshold question in the Court's choice of law analysis is whether an actual conflict of substantive law exists between the possible jurisdictions. See id.

One of the relevant substantive issues is whether defective workmanship constitutes an occurrence under the policies. Accordingly, this Court must determine whether there is an actual conflict between what Massachusetts and New Jersey consider to be an occurrence. See id. New Jersey insurance law recognizes faulty workmanship claims as falling within the parameters of an "occurrence," thus triggering coverage, "so long as the allegedly defective work had been performed by a subcontractor rather than the policy holder itself." Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 418 (2016). Within this framework, Tocci argues that it is entitled to coverage because the alleged defective work was handled by its subcontractors and constitutes a protected

occurrence. In contrast, under Massachusetts law, "faulty workmanship fails to constitute an accidental occurrence in a commercial general liability policy." Am. Home Assur. Co. v. AGM Marine Contractors, Inc. ("AGM I"), 379 F.Supp.2d 134, 136 (D. Mass. 2005), aff'd 467 F.3d 810 (1st Cir. 2006).

Because the case law of Massachusetts and New Jersey conflict on what constitutes an occurrence, this Court should proceed to the second step of the choice of law analysis of the forum state.

**B.   Massachusetts Has the Most Significant Relationship with the Policies**

Since there is an actual conflict, the Court must determine which state law to apply. Massachusetts courts "take a flexible interest-based approach to conflict of laws issues and will consider a wide variety of factors in choosing the applicable law." Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 30 (1st Cir. 1997). Massachusetts courts look to three sections of the Restatement (Second) Conflict of Laws ("Restatement"): §§ 6, 188, and 193.

*1.   Restatement §§ 6, 188, and 193*

Restatement § 6 provides the following factors:

(1) the needs of the interstate and international system, (2) the policies of the forum, (3) the policies of other interested jurisdictions, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty,

predictability and uniformity of result, and (7) ease of
applicability.

Millipore Corp., 115 F.3d at 30.

Section 188 "provides a generic contract analysis." Jenny
B. Realty, LLC v. Danielson, LLC, 456 F. Supp. 3d 307, 314 (D.
Mass. 2020) (quoting Bergin v. Dartmouth Pharm., Inc., 326
F.Supp.2d 179, 181 (D. Mass. 2004)). The contacts to be
considered in applying the principles of § 6 to determine the
applicable choice of law include: "(a) the place of contracting,
(b) the place of negotiation of the contract, (c) the place of
performance, (d) the location of the subject matter of the
contract, and (e) the domicil, residence, nationality, place of
incorporation and place of business of the parties." Restatement
(Second) of Conflict of Laws § 188 (1971).

When dealing with insurance coverage disputes,
Massachusetts courts also look to § 193 of the Restatement,
which "sets forth choice of law principles applicable to
disputes concerning insurance contract." HDI-Gerling Am. Ins.
Co. v. Navigators Ins. Co., No. 15-cv-10338-FDS, 2015 WL
5315190, at *4 (D. Mass. Sept. 11, 2015) (quoting Clarendon
Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 803 N.E.2d 750, 752
(Mass. App. Ct. 2004)) ("The Restatement is structured such
that, when faced, as here, with a conflict of laws question
involving insurance contracts, the first step is to ascertain
whether the provisions of § 193 will resolve the matter; if not,

the next step is to employ the principles set forth in § 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in § 6.").

Section 193 instructs that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 57 N.E.3d 18, 20-21 (Mass. App. Ct. 2016) (quoting Restatement § 193 comment b). "The insured risk generally will be located in the State where the policy holder is domiciled." OneBeacon, 57 N.E.3d at 21; see also id. ("[W]hile an underlying tort claim might properly be resolved under the laws of the State where the injury occurred, the obligation of an insurer to defend and indemnify against that claim is more appropriately determined by reference to the insurance contract itself and the circumstances of its issuance."); CE Design Ltd. v. Am. Econ. Ins. Co., 947 F. Supp. 2d 151, 157 (D. Mass. 2012), vacated and remanded on other grounds, 755 F.3d 39 (1st Cir. 2014) ("Massachusetts courts have further held that where the insured risk can implicate multiple states, the other governing principles of choice of law generally point to law of the domicile of the policyholder."); HDI-Gerling Am. Ins. Co., 2015 WL 5315190, at *4 ("Massachusetts courts have held that where the insured risk can implicate

multiple states, other governing principles of choice of law generally point to the law of the domicile of the policyholder.").

The Massachusetts Supreme Judicial Court prefers one state's law to govern multistate policies, "reason[ing] that the expectations of the parties as well as commercial realities require that the language in a single set of insurance policies should mean the same thing in every state." Millipore Corp., 115 F.3d at 30-31 (citing United Techs. Corp. v. Liberty Mut. Ins. Co., 555 N.E.2d 224, 227 (Mass. 1990)). See also Gen. Elec. Co. v. Lines, No. 06-3106-BLS1, 2008 WL 2908053, at *3 (Mass. Super. Ct. July 10, 2008) (discussing the SJC's single-state preference and noting that it "pragmatically leads to the domicile of the policyholder generally being the choice of law state because that is the only state which all the policies are certain to have in common").

> 2.  *Applying and Weighing the Restatement Factors*

The overarching principles laid out in § 6 and the contacts in § 188 lean towards Massachusetts. Tocci emphasizes the factors which it claims supports application of New Jersey law: Admiral is headquartered in New Jersey, Admiral countersigned the policy in New Jersey, and the Toll Project was in New Jersey. Admiral in turn emphasizes the factors that point to the application of Massachusetts law: John Tocci resides in

Massachusetts and the two Tocci entities are domiciled and headquartered in Massachusetts. The Policies were applied for, and issued, in Massachusetts. Although Admiral was incorporated and headquartered in other states, the Policies were brokered through the Driscoll Agency, a company domiciled in Massachusetts. Driscoll's Notice of Finance Premium to Tocci was issued in Massachusetts. Additionally, Admiral's current lawsuit involves claims that arose in Massachusetts and New Jersey, and Tocci has in the past faced coverage disputes arising from work done in New York and Massachusetts. See Tocci Bldg. Corp. of N.J. v. Va. Surety Co., 750 F. Supp. 2d 316 (D. Mass. 2010); Tocci Bldg. Corp. v. Zurich Ins. Co., 659 F. Supp. 2d 251 (D. Mass. 2009).

Restatement §§ 6 and 188 provide the Court support for choosing Massachusetts law, as more factors point to Massachusetts and there is broader uniformity of results with using the law of the policyholder when there are multiple disputes in multiple states. Section 193 provides specific guidance for this type of dispute and bolsters the conclusion that Massachusetts law should apply: "The insured risk generally will be located in the State where the policy holder is domiciled." Restatement § 193 comment b. All three Tocci entities are in Massachusetts. Based on all the factors, the

Court concludes that they weigh in favor of application of Massachusetts law.

**II.  <u>Duty to Defend</u>**

    **A.   Policy Language**

Admiral seeks declaratory judgment that it is not obligated to defend Tocci. Tocci, in turn, seeks declaratory judgment that Admiral is obligated to defend it against Toll's underlying action.

In Massachusetts, the interpretation of an insurance policy is a question of law for the court. See <u>Essex Ins. Co. v. BloomSouth Flooring Corp.</u>, 562 F.3d 399, 403 (1st Cir. 2009). Courts apply "familiar rules of contract interpretation" when analyzing the scope of an insured's duty to defend. <u>Sanders v. Phoenix Ins. Co.</u>, 843 F.3d 37, 42 (1st Cir. 2016). An insurance contract should be interpreted based on the plain meaning of its language. See <u>B & T Masonry Constr. Co., Inc. v. Pub. Serv. Mut. Ins. Co.</u>, 382 F.3d 36,39 (1st Cir. 2004). Courts may also consider what an "objectively reasonable" policy holder would expect the policies to cover. <u>Vicor Corp. v. Vigilant Ins. Co.</u>, 674 F.3d 1, 11 (1st Cir. 2012).

The Policies state that Admiral will pay "sums that the insured becomes legally obligated to pay as damages because of ... 'property damage,'" provided property damage is caused by an "occurrence." Dkt. 15-5. "Property damage" includes "[p]hysical

[14]

injury to tangible property" and "loss of use" of tangible property. Id. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id.

"General liability coverage is not intended as a guarantee of the insured's work, and for that reason, general liability policies contain 'business risk' exclusions." Mills Constr. Corp., Inc. v. Nautilus Ins. Co., No. 18-cv-10549-IT, 2019 WL 1440404, at *4 (D. Mass. Mar. 31, 2019) (quoting Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., 731 N.E.2d 569, 572 (Mass. App. Ct. 2000)). Under Admiral's "Damage to Property" exclusion, insurance does not apply to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Dkt. 15-5. Exclusion (j)(6) also precludes coverage of "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Id. "Your work" means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." Id.

**B.    Policy Construction**

The duty to defend is "based on the facts alleged in the complaint and those facts which are known by the insurer." B & T Masonry Constr. Co., 382 F.3d at 39 (quoting Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989)). Extrinsic facts may add "substance and meaning to skeletal claims only adumbrated in the complaint," Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 16 (1st Cir. 2002), but an insured may not, "in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage." Bos. Symphony Orchestra, 545 N.E.2d at 1160. See also Mills, 2019 WL 1440404, at *8 ("For purposes of a determination of insurance coverage, it is the underlying claimant's claims, and not the insured's contrary version of events, or even the merits of the underlying claim, that controls the issue of coverage at the duty to defend stage.").

The insured "generally bears the burden of proving that a particular claim falls within a policy's coverage." Lee Kennedy Co. v. Arch Ins. Co., 357 F. Supp. 3d 81, 84 (D. Mass. 2019) (quoting Salvati v. Am. Ins. Co., 855 F.3d 40, 45 (1st Cir. 2017)). If the insured can satisfy this burden, then the insurer bears the burden of showing that one or more exclusionary

provisions in the insurance policy applies. Essex Ins. Co., 562 F.3d at 404.

**C.  Whether Toll's Complaint Alleges Property Damage Caused by an Occurrence**

*1. Parties' Arguments*

Admiral argues it has no duty to defend Tocci because Toll's allegations do not fall within the scope of coverage. It contends that "a general contractor's faulty workmanship — i.e., its breach of its contract with a third party to deliver a quality product – is simply not the kind of risk covered by a CGL policy." Dkt. 11 at 14 (citing Lee Kennedy Co., 357 F.Supp.3d at 83 ("To the extent that [the construction contractor] bases its claim on the contract with [a client] in which [the construction contractor] assumed liability for the defective work, [the construction contractor's] coverage claim falls directly within the contract liability exclusion.")).

Tocci avers that "the Toll Action is not limited to damages to the allegedly defective work itself, but rather includes damages for resulting property damage to non-defective work." Dkt. 82 at 23.

*2. Analysis*

a.  Property damage

The Policies state that Admiral will pay "sums that the insured becomes legally obligated to pay as damages because of

. . . 'property damage,'" provided property damage is caused by an 'occurrence.'" Dkt. 15-5. The First Circuit agreed with "established, well-grounded law" that the phrase "legally obligated to pay as damages" in a commercial general liability insurance policy applies only to tort liability and not contractual liability. Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67-69 (1st Cir. 2012) (citing 7A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:4 (3d ed. 2009) ("A [CGL] policy is designed and intended to provide coverage to the insured for tort liability for physical injury to the person or property of others. A [CGL] policy is not intended to provide coverage for the insured's contractual liability which merely causes economic losses.")). CGL coverage "is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." Commerce Ins. Co. v. Betty Caplette Builders, Inc., 647 N.E.2d 1211, 1213 (Mass. 1995).

In Friel Luxury Home Construction, Inc. v. ProBuilders Specialty Insurance Co., No. 09-cv-11036-DPW, 2009 WL 5227893 (D. Mass. Dec. 22, 2009), the underlying action alleged that "the roofing work was 'of such shoddy quality that the entire gutter system required replacement.'" Id. at *4. Though the poor work on the roof led to problems with the gutter system, the

court determined that there was no "property damage" within the meaning of the Policy: "[B]ecause 'CGL policies are intended to protect the insured from liability for injury or damage to the persons or property of others[,] they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products.'" Id. (quoting Amtrol, Inc. v. Tudor Ins. Co., No. 01-cv-10461-DPW, 2002 WL 31194863, at *6 (D. Mass. Sept. 10, 2002)).

Here, Toll's Complaint does not allege covered "property damage" because none of the alleged damage was outside the scope of the work that Tocci was contractually required to fulfill as general contractor. Toll has alleged numerous defects to the work, but these allegations are for faulty workmanship at Tocci's own Project. The Toll Complaint alleges damage to underground pipes caused by soil settlement from the defective work, and Tocci argues that a defective portion of work by one subcontractor damaged a non-defective portion of work on the same Project by a different subcontractor under their supervision. See, e.g., Dkt. 82 at 9-10 (explaining that the piping systems were being worked on by Metrocorp Plumbing, Inc., another subcontractor). Toll alleges that Tocci made numerous mistakes that caused Toll economic harm because they had to hire another general contractor to repair and replace the defective work Tocci was under contract to perform. But this economic harm

is not the same as tort liability for damage to the property of another. The Court determines that there is no "property damage" within the meaning of the Policies.

b.   Occurrence

The Admiral Policies define "occurrence" as "an accident, including a continuous or repeated exposure to substantially the same generally harmful condition." Dkt. 15-5. Under Massachusetts law, "faulty workmanship fails to constitute an accidental occurrence in a commercial general liability policy." AGM I, 379 F. Supp. 2d at 136. "The rationale for such exclusions is that faulty workmanship is not an insurable 'fortuitous event,' but a business risk to be borne by the insured." Id. (quoting Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:11 (3d ed. 1997). See also Davenport v. U.S. Fid. & Guar. Co., 778 N.E.2d 1038 (Table), 2002 WL 31549391, at *1 (Mass. App. Ct. Nov. 18, 2002) ("Faulty workmanship, alone, is not an 'occurrence' as defined in the [general commercial liability] policy; nor does the cost to repair the defective work constitute property damage."). "There is nothing about the general nature or purpose of a comprehensive general liability insurance policy that would lead an insured reasonably to expect that the policy covered a loss . . . caused by his breach of contract and poor workmanship." Friel, 2009 WL 5227893, at *5 (quoting Bond Bros.

[20]

v. Robinson, 471 N.E.2d 1332, 1336 & n.3 (Mass. 1984) (denying coverage because the insurer "certainly did not intend" its standard CGL policy to "insure contractual obligations arising from defective workmanship")). Accordingly, there is no duty to defend for "faulty workmanship that damages only the resulting work product." All Am. Ins. Co. v. Lampasona Concrete Corp., 120 N.E.3d 1258, 1261 (Mass. App. Ct. 2019).

Tocci attempts to gain coverage by arguing that damage caused by one subcontractor led to damage on other portions of the Project. But Tocci was hired to manage all aspects of the Toll development. As the general contractor, damage that occurred to other parts of the Project was still damage to Tocci's work product, rather than damage to a third party. See Mello Const., Inc. v. Acadia Ins. Co., 874 N.E.2d 1142 (Table), 2007 WL 2908267 at *5 (Mass. App. Ct. Oct. 5, 2007) (finding a general contractor was not entitled to coverage regarding damage to a concrete flooring slab as its "work product, as general contractor, encompassed the entire elementary school" it was hired to construct). Toll does not allege, nor does Tocci argue, that there was any damage outside the scope of the Project. The damage to underground utilities, a sheetrock, a concrete slab, and the wood framing are all results from faulty workmanship in the construction project. Admiral's Policy is not triggered by this type of breach of contract claim under Massachusetts law.

Because the defects do not amount to property damage arising out of an occurrence within the meaning of the CGL policy, the Court holds that Tocci has not met its burden of showing that the allegations in Toll's action fit within the covered risks of the Admiral Policy. Admiral does not have a duty to defend Tocci in the Toll Action.

### III. <u>Business Risk Exclusions</u>

Admiral's "Damage to Property" exclusion contains two relevant exceptions: First, insurance does not apply to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Dkt. 15-5. Admiral also does not cover "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." <u>Id.</u> "Your work" means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." <u>Id.</u>

Given the Court's determination that the allegations do not trigger coverage under the Policy, the Court does not need to analyze whether the business risk exclusions would also bar coverage as an alternative holding. There is strong support for Admiral's position in the alternative that the business risk

exclusions would exclude coverage in the underlying action. See Friel, 2009 WL 5227893, at *6 ("[I]t is clear that any work or operations performed by Friel, as the general contractor, necessarily encompassed the Latessas' home in its entirety, and [d]amage to the insured's particular work (through negligent performance) is excluded from coverage."); Mills, 2019 WL 1440404, at *7 ("Although Plaintiffs assert that they were not working on the foundation at the time that the damage occurred, the scope of the work under contract, as claimed by [the underlying complaint], included rebuilding the entire home. These allegations place the foundation damage within exclusion (J)(5) because it occurred during operations on the 'particular part of real property' on which the insured was performing operations.").

**CONCLUSION**

For the reasons stated above, the Court **ALLOWS** Admiral's motion for partial summary judgment (Dkt. 10) and **DENIES** Tocci's motion for partial summary judgment (Dkt. 88).


SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    United States District Judge